In the Matter of the NIAGARA FALLS URBAN RENEWAL AGENCY, Respondent, v DONALD J. O'HARA, as City Manager of the City of Niagara Falls, et al., Appellants.

Fourth Department, May 27, 1977

*Carl E. Mooradian, Corporation Counsel,* for appellants.

*Runals Broderick Shoemaker Rickert Berrigan & Doherty* (*Patrick Berrigan* of counsel), for respondent.

HANCOCK, JR., J. In a city with a council-manager form of government, is the mayor or the city manager the proper official, with the concurrence of the city council, to initiate a request pursuant to section 40 of the Municipal Home Rule Law for special State legislation relating to its property, affairs or government? This is the central question in the legal proceedings arising from a disagreement between the Mayor of Niagara Falls[1] and the majority of the City Council over proposed changes in the size and composition of the petitioner, Niagara Falls Urban Renewal Agency.

The petitioner, created by section 593 of the General Municipal Law, has since June, 1965, been composed of nine members consisting of the Mayor and four Councilmen of the City of Niagara Falls plus four members appointed by the Mayor with approval of the City Council. On April 25, 1977, pursuant to section 40 of the Municipal Home Rule Law the City Council by a vote of three to two approved a home rule request (with the Mayor voting in the minority) calling for the enactment of special legislation amending section 593 of the General Municipal Law.[2] The effect of the legislation would be to eliminate the four mayoral appointees from the agency and to reduce its total membership to five including the Mayor and the four other Councilmen.

Inasmuch as the Mayor opposed the resolution, the majority of the Council made known their intention to submit the home rule request to the Legislature with the City Manager's signature in lieu of the Mayor's. The City Manager, appointed by and serving at the pleasure of the Council, was on April 25, 1977, and is now, ready to sign the request and to direct that it be forwarded by the City Clerk.

Contending that only the Mayor could properly execute the

---

1. The City of Niagara Falls has a council-manager form of government. The mayor is elected as Mayor, but additionally serves as a member of the City Council, votes as a member thereof, and has no veto power. The city Manager is appointed by and serves at the pleasure of the City Council. Most, if not all, of the administrative duties of the Mayor are delegated to the City Manager (see Niagara Falls City Charter, §§ 42 and 44; L 1916, ch 530).

2. The special legislation was introduced in the New York State Senate and Assembly on March 29, 1977, by Senate Bill No. 5047 and Assembly Bill No. 7346, respectively, both entitled: "AN ACT to amend the general municipal law in relation to the Niagara Falls urban renewal agency".

home rule request under section 40 of the Municipal Home Rule Law, petitioner commenced the instant proceeding pursuant to CPLR article 78 by an order to show cause containing a temporary restraining order prohibiting the City Manager and the City Clerk from processing the request. Following a hearing, Special Term issued its order on May 2, 1977, holding that the home rule request required the Mayor's approval, permanently enjoining the City Manager and City Clerk from further action in the matter, and granting leave to respondents to bring the instant appeal.

We hold that the Mayor, not the City Manager, is the proper official to execute the home rule request (Municipal Home Rule Law, § 40). The language of the statute and its plain meaning compel this conclusion: *"The elective or appointive chief executive officer, if there be one, or otherwise the chairman of the board of supervisors, in the case of a county, the mayor in the case of a city or village or the supervisor in the case of a town* with the concurrence of the legislative body of such local government, or the legislative body by a vote of two-thirds of its total voting power without the approval of such officer, may request the legislature to pass a specific bill relating to the property, affairs or government of such local government which does not in terms and in effect apply alike to all counties, all counties other than those wholly included within a city, all cities, all towns or all villages, as the case may be". (Emphasis added.)

It is fundamental that the intention of the Legislature is first to be sought from the act itself, and that the statute is to be construed according to its most natural and obvious sense (McKinney's Cons Laws of NY, Book 1, Statutes, §§ 92 and 94, and cases cited therein). Manifestly, the Legislature intended the words "elective or appointive chief executive officer, if there be one, or otherwise the chairman of the board of supervisors, in the case of a county" to be read as one phrase applying only to counties just as "mayor" is intended to apply only to cities or villages, and "supervisor" only to towns. Each phrase contains the title of the office (for example, mayor) and the unit of local government corresponding to that office (for example, city or village). Just as it is only villages or cities which have mayors, and only towns which have supervisors, only counties have either elective or appointive county executives or, if there be no executive, chairmen of boards of supervisors. To read the phrase "elective or appointive chief

executive officer" as applying to cities, villages and towns would not only be contrary to the statute's natural and logical meaning, but would also make the separate references to "mayor" in the case of cities or villages and "supervisor" in the case of towns unnecessary and meaningless. Such an interpretation would contravene the established rules of construction that all parts of a statute must be harmonized (McKinney's Cons Laws of NY, Book 1, Statutes, § 98, and cases cited therein) and that: "a statute must be read so that each word therein will have a meaning and not so that one word or sentence will cancel and render meaningless another word or sentence" (McKinney's Cons Laws of NY, Book 1, Statutes, § 98, Discussion, p 223).

The natural and logical interpretation of section 40—that the phrase "elective or appointive chief executive officer" refers only to counties—is reinforced by the relevant legislative history of the statute. As originally enacted in 1963, the language referring to counties in the first sentence was "[t]he chairman of the board of supervisors or the elective chief executive officer, if any, in the case of a county" (L 1963, ch 843). By chapter 78 of the Laws of 1964 the phrase was rearranged and expanded to include appointive as well as elective chief executive officers. That the purpose of the change was to empower appointed county executives to act in cases of home rule requests (Municipal Home Rule Law, § 40) and emergency requests (Municipal Home Rule Law, § 20) is apparent from the legislative memorandum accompanying the 1964 amendment.[3]

It is significant that the Legislature failed to include in the 1964 amendment of section 40 pertaining to appointed executives of counties any comparable amendment empowering appointed managers or executives of cities and villages to sign home rule requests.[4] (See McKinney's Cons Laws of NY, Book

---

3. The legislative memorandum makes it clear that the change was made so that the power of request would be vested in a county-executive officer, whether elected or appointed, rather than in a board of supervisors (see particularly subdivision e of the legislative memorandum in NY Legis Ann, 1964, p 260).

4. At the time of the 1964 amendment to section 40, a significant number of cities and villages in New York operated under a council-manager form of government, with managers appointed therein (Local Government in New York State, published by the Office for Local Government, June, 1973). In light of this fact and the Legislature's presumed awareness of it, one is compelled to conclude that the Legislature's failure to include any reference to managers or appointed officials in the phrase referring to cities and villages in section 40 in 1963 and then again in the 1964 amendment, was intentional. ·

1, Statutes, § 240, referring to the established maxim of statutory construction, *"expressio unius est exclusio alterius,"* and cases cited therein, especially *People v Lewis* [29 NY2d 923, 924]).

Furthermore, as if to dispell any remaining doubt about its meaning, the Legislature itself has, in its official home rule request form, interpreted the very clause in question.[5] On the officially sanctioned form to be signed by the appropriate chief executive officer, the term "chief executive officer" is defined for a city or village as *"the mayor (not manager)"* (emphasis added). Such interpretation is consistent with the long-established practice followed by cities with council-manager governments, such as Niagara Falls, of submitting home rule requests executed by the mayor, not the city manager. It is an accepted rule that the interpretation given a statute by those who must operate under its mandate is deserving of great weight in judicial construction (see McKinney's Cons Laws of NY, Book 1, Statutes, § 129, and cases cited therein).

We reject appellants' argument that our holding that the Mayor, and not the City Manager, is the proper official to sign home rule requests, is inconsistent with the provision of the New York Constitution specifying that such requests be made by the *"chief executive officer* concurred in by a majority [of the local legislative body]"* (NY Const, art IX, § 2, subd [b], par [2]; emphasis added). From the context and history of this constitutional home rule provision, it is evident that the drafters of the 1963 Constitution intended the phrase "chief executive officer" to mean the person generally recognized as the chief governmental official of the unit of local government involved, and that, in the case of cities and villages, this meant the mayor. The history of the provision bears this out. Section 2 of article IX of the 1963 Constitution embraced and consolidated the various sections in the 1938 Constitution pertaining to home rule powers, and the pertinent implementing home rule legislation. Under these prior provisions, mayors in the case of cities (1938 NY Const, art IX, § 11) and mayors in the case of villages (see 1938 NY Const, art IX, § 16, as implemented by Village Home Rule law, § 22 [L 1940, ch

---

5. The form is required by section 40 to conform to "rules promulgated by concurrent resolution of the senate and assembly pursuant to article three-A of the Legislative Law." Pursuant to section 55 of the Legislative Law, dealing with special city laws, this form was adopted by concurrent resolution of the senate and assembly (see Manual of the Clerk of the Legislature, rule 25 [1966]).

823]) were designated as the officials to sign home rule requests with the concurrence of the local legislative bodies. No distinction was made in the 1938 Constitution between cities having manager-council forms of government and those that did not. In all instances the mayor was designated as the official having the power to sign a home rule request. There is no indication in the 1963 Constitution of any intent to modify or deprive the mayors of villages and cities, with or without managers, of the home-rule-request power which traditionally had been vested in them by the provisions of the 1938 Constitution and the implementing home rule legislation.

Moreover, in the 1938 Constitution there is cogent evidence in the section pertaining to village home rule that the drafters of the 1963 Constitution used the phrase "chief executive officer" as a term of art meaning "mayor". Section 16 of article IX of the 1938 Constitution, dealing with village home rule, provided that home rule requests should be made by the "chief executive officer of the village affected, concurred in by the local legislative body". There is no reference in section 16 to mayors of villages. Inasmuch as the chief governmental official of the village was generally regarded to be the mayor, the drafters presumably intended the phrase "chief executive officer" to mean "mayor" so as to give meaning and effect to the provision. Significantly, the Legislature adopted this construction of "chief executive officer" as meaning "mayor" in legislation implementing section 16 of article IX of the 1938 Constitution by providing specifically in that legislation that the *mayor* is empowered to make home rule requests (Village Home Rule Law, § 22 [L 1940, ch 823]). No other official is empowered to do so in that implementing statute. In view of this history and the previous legislative interpretation, it must be presumed that if the drafters of the 1963 Constitution had not intended the phrase "chief executive officer" to include mayors of all cities and villages, with or without managers, they would clearly have made their intention known.

Finally, the interpretation of section 40 urged on us by appellants, namely, that only an official vested with executive or administrative powers may sign a home rule request, would result in the abolition of powers previously conferred on mayors of cities and villages, a result in direct contravention of subdivision 3 of section 50 of the Municipal Home Rule

Law.[6] No intention to deprive the mayors of such powers is "clearly manifest from the express provisions" of the statute, as required by subdivision 3 of section 50. We may not assume that the Legislature in enacting section 40 was ignorant of another section in the same statute (§ 50, subd 3); nor may we assume that the Legislature intended to violate the section. The conclusion is inescapable, therefore, that the Legislature intended to preserve the statutory power of mayors of cities and villages to sign home rule requests.

There is no merit to appellants' contention that the petition should be dismissed because it was improperly instituted as an article 78 proceeding. The matter may be considered as an action for a declaratory judgment (CPLR 103, subd [c]; *Matter of Lakeland Water Dist. v Onondaga County Water Auth.*, 24 NY2d 400; *Dunn & Bradstreet v City of New York*, 276 NY 198, 206). Accordingly, we treat it as such.

Nor are the members of the City Council necessary parties. The action concerns the powers and duties of the Mayor and City Manager under the governing statutes, not the statutory powers and obligations of the City Council or the validity of any legislation enacted by that body. Moreover, the interests of the Council have been effectively protected by the appellant City Manager.

The judgment below should be modified in accordance with this opinion and, as modified, affirmed.

CARDAMONE, J. P., SIMONS, DENMAN and WITMER, JJ., concur.

Judgment unanimously modified, on the law, in accordance with opinion by HANCOCK, JR., J., and, as modified, affirmed, without costs.

---

6. Subdivision 3 of section 50 of the Municipal Home Rule law provides: "It is not the intention of the legislature hereby to abolish or curtail any rights, privileges, powers or jurisdiction heretofore conferred upon or delegated to any local government or to any board, body or officer thereof, unless a contrary intention is clearly manifest from the express provisions of this chapter or by necessary intendment therefrom, or to restrict the powers of the legislature to pass laws regulating matters other than the property, affairs or government of local governments as distinguished from matters relating to their property, affairs or government."